<u>AFFIDAVIT IN SUPPORT OF FORFEITURE COMPLAINT</u>

I, Michael Halick, hereby state as follows:

      1.      The affiant, SA Michael Halick, a Special Agent with the Drug Enforcement Administration, being first duly sworn, states that there are reasonable and probable grounds to believe that money seized from Ian L. Perez on a traffic stop are proceeds from narcotics trafficking, and/or proceeds used or intended to be used to facilitate a violation of the Controlled Substance Act.

      2.      I have been a Special Agent with the Drug Enforcement Administration since June 2024. I am currently assigned to the Louisville Division Office Group 2 with the US Drug Enforcement Administration.

      3.      During my career as a special agent, I have participated in investigations involving illegal drugs. Through my training and experience and through contacts with other agencies, I know:

      A.      That it is common for the drug traffickers to transport illegal drugs, drug paraphernalia and contraband across state lines and return with currency in an attempt to conceal illicit activities from law enforcement.

      B.      That narcotics trafficking is predominately cash based. Currency being sent via wire, bank transfer, and or from lending institutions creates records and a possibility of exposure and possible seizure. Because of this, narcotics traffickers will utilize other means outside of well-established legal financial practices to avoid detection and possible seizure.

      C.      Currency individually rubber banded is not consistent with how financial institutions issue currency to patrons, but drug trafficking proceeds are normally banded this way.

      D.      Narcotics traffickers who regularly handle controlled substances often leave the scent of controlled substances on the bags and other materials they handle. Currency is often stored in close proximity to the controlled substances, transferring the odor. Narcotic canines are trained to alert on these substances.

      E.      Narcotics traffickers will often use multiple communication methods in order to facilitate narcotics transactions. Multiple cellular devices with encrypted means of communication i.e., "WhatsApp" are a common with narcotics traffickers. These encrypted communication apps are more difficult for law enforcement to access and help in hiding illegal activities.

      4.      This affidavit is being submitted in support of the civil complaint for forfeiture of $31,980.00 in United States Currency that was seized from Ian PEREZ as described more fully

below. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit does not contain all of the information known, it is intended to show merely that there is sufficient reasonable and probable grounds to believe the $31,980.00 constitutes proceeds traceable to narcotics trafficking, intended for narcotics trafficking, used or intended to be used to facilitate narcotics trafficking in violation of 21 U.S.C. §§ 841 et seq., and subject to forfeiture under 21 U.S.C. § 881(a)(6).

## Facts of the Case

5. On or about August 13, 2024, members of the Nelson County Sheriff's Office were working their patrol shift and observed a black BMW X6 SUV traveling 105 miles per hour via radar East Bound on the Martha Layne Collins Bluegrass Parkway. Deputies Berry and Quire conducted a traffic stop at the 38MM East Bound with the BMW X6 with Florida Registration plate (number known but omitted).

6. During the traffic stop, Ian L. PEREZ was identified as the driver of the vehicle, the front passenger was identified as Josue GRACIAS, and the rear passenger was identified as Alessandra FERREIRA. Deputies could smell a strong odor of Marijuana emitting from the vehicle. All three occupants were asked to exit the vehicle and were separated from each other. Deputy Logan Crady and his K9 partner, Turbo, backed up Deputies Berry and Quire on their traffic stop. Deputy Crady deployed his K9 to conduct an exterior open-air sniff of the BMW. K9 Turbo gave a positive alert to the odor of narcotics in the vehicle. A probable cause search of the vehicle was then conducted.

7. During the search of the vehicle, Deputy Quire located a black bag in the back seat. Inside of the black bag, Deputy Quire discovered one glass jar of Marijuana, one Marijuana grinder with Marijuana residue, one bag of Marijuana, and rolling papers used for smoking Marijuana. The back seat passenger, FERREIRA, claimed the Marijuana and drug paraphernalia were hers.

8. Also, during the search of the vehicle, Deputy Crady located a black backpack in back of the driver's side seat. The backpack contained a large amount of United States Currency which was in six (6) bundles and rubber banded (later determined to be the defendant currency $31,980.00).

9. Deputy Crady contacted TFO Christopher Conway and requested TFO Conway to respond to the traffic stop while the Deputies continued their search of the vehicle. Deputy Crady then removed the backpack from the vehicle and placed it away from the vehicle and ran K9 Turbo independently on the backpack containing the United States Currency and K9 Turbo, again, gave positive indication to the odor of Narcotics. Turbo was a reliable, trained and certified narcotics detection K9. During the search, Deputies remarked multiple times that there

was a "green" marijuana smell in the vehicle, the smell of which is a strong indicator that a large amount of marijuana was recently in the vehicle.

10. TFO Conway arrived at the traffic stop. TFO Conway met with Deputy Crady, Quire, and Berry and began getting the information from the traffic stop about the occupants, the vehicle, the contraband located, and the inconsistent stories from the occupants.

11. TFO Conway interviewed Alessandra FERREIRA who was standing in front of Deputy Berry and Quire's marked police cruiser. FERREIRA provided her name, her address on Park Ave., Bronx, New York (full address known but omitted), and her telephone number (number known but omitted). FERREIRA said that the money was not hers and that it was her boyfriend's, Ian PEREZ. FERREIRA had no idea at all how much money was there. FERREIRA said that all three occupants left New York about a week ago and travelled to Tennessee and stayed with her brother in Clarksville, Tennessee. FERREIRA said that they had left Tennessee today and were traveling back to New York. FERREIRA said that PEREZ was supposed to buy a vehicle in Tennessee with the money. FERREIRA did not know what type of vehicle, did not know how much the vehicle cost, and did not know who PEREZ was buying the vehicle from. FERREIRA said that the other passenger, identified as Josue GRACIAS, was PEREZ's friend. FERREIRA said that she had seen him around a month ago but never met him until this trip. FERREIRA said that PEREZ did not have a job but thinks that he used to drive a truck for Pepsi. FERREIRA said that PEREZ has not had a job since they have been dating, approximately three months. FERREIRA said she did not know where PEREZ got the money from. FERREIRA said that she worked at a sneaker store and was also a dancer. FERREIRA did not know what GARCIA did for employment and knew nothing about him, barely his first name.

12. TFO Conway interviewed Ian PEREZ who was standing in front of Deputy Crady's marked police cruiser. PEREZ provided his name, his address on Decatur Ave. Bronx, New York (known but omitted here), and his telephone number (known but omitted). PEREZ had one cell phone on his person and one additional cell phone was in the driver's seat. During the traffic stop, the cell phone in the driver's seat was receiving phone calls through WhatsApp. PEREZ stated that he rented the BMW approximately a month ago in New York (no rental receipt was located in vehicle). The front windows of the BMW had been tinted. PEREZ said that the vehicle had tinted windows on it when he rented it. PEREZ said they had left New York about 10 days ago and travelled to Nashville, Tennessee. PEREZ said he stayed in a hotel for three days and then stayed at another female friend's house the other days. [TFO Conway located a receipt in the vehicle from a fast-food restaurant in Bowling Green almost 24-hours prior (the traffic stop location was about an hour and a half from Bowling Green).] PEREZ said while he was in Tennessee, he wanted to browse for a vehicle to buy and that he was going to buy a Mercedes car.  PEREZ then stated that he was going to buy a Mercedes or a 3500-pickup truck. PEREZ said that they left Tennessee today. PEREZ said that he left New York with $35,000.00 in cash. PEREZ said that he now had around $32,000.00 then said $31,000.00 and then said $33,000.00.

Attachment A-3

13.     PEREZ said that he made roughly $25,000.00 - $30,000.00 last year as a tow truck driver. PEREZ said he called the other male passenger "J" and had met him in New York approximately 8 years ago. PEREZ said that GRACIAS just came on the trip to ride and does not know where GRACIAS lives or where he works.

14.     PEREZ was very hesitant to take ownership of the currency. PEREZ eventually said that the currency was his but that his son's god-father had money seized from him 12 years ago and that he told him to never claim the money. PEREZ then said that he was going to be honest and the reason he had the currency was because he did not want to pay taxes on it. PEREZ then pulled out a receipt from his wallet from Elizabeth & Co. Fine Jewelry Pawn shop located at 551 W 207th Street, New York, New York. The receipt showed on 07/24/2024 at 5:04PM, 1 chain jewelry, 14KT, 657.30 DWT; 1 - Cuban Solid Chain and the amount as $30,000.00 and the due date as 11/24/2024. The customer information had PEREZ name and address but with a different phone number that was given to law enforcement. PEREZ said that the pawn shop gave him the United States Currency just as he had it with rubber bands on it. PEREZ said that all pawn shops in New York give out the money like that with rubber bands. PEREZ then said that he thought it was weird that the pawn shop gave him money like that, and it was in rubber bands after just stating that's how all pawn shops in New York give out money. PEREZ pawned the chain and did not sell the chain. PEREZ said he needed a vehicle because he had four children.

15.     TFO Conway then interviewed Josue GRACIAS, who was sitting in the back seat of Deputy Berry and Quire's marked police cruiser. GRACIAS provided his name, his address (on West 156th Street New York, New York), his date of birth, and his 2 telephone numbers. GRACIAS said that they were in Tennessee for 3 or 4 days and just went to visit "Ale's" brother. GRACIAS said PEREZ buys and sells cars and that PEREZ was headed to New York to buy a car from the internet. GRACIAS also had WhatsApp messages coming in on one of phones during the interview.

15.     FERREIRA was issued a citation for possession of marijuana and drug paraphernalia. PEREZ was issued a citation for speeding over 26 MPH over the limit and careless driving. While he claimed the money as his, PEREZ refused to sign as the owner of the money once it was seized.

16.     DEA started administrative proceedings, during which PEREZ filed an online claim to the $31,980, which was received by DEA on or about September 23, 2025. In his claim, he stated:

> *I have physical proof of the source of the money. I sold some jewelry I had owned for a while, and the funds I received match the amount that was seized by the police. I have attached the receipt as proof.*

Attachment A-4

He attached a pawn receipt dated July 24, 2024, which had his name and address but with a different cell phone than he had given the officer during the stop. The purported receipt shows that a gold chain was pawned for $30,000. It shows that the amount financed was $30,000, with finance charge of $5700, an APR of 57% and a due date of November 24, 2024. Assuming the receipt is legitimate, it does not support PEREZ's claim because it is marked as a renewal, which most likely means that he merely extended the terms of the loan by paying finance charges to extend the term of the pawn (not that he had received $30,000 on July 24, 2024). However unlikely, even if this money came from the pawn shop, given all of the facts, there is probable cause that, at the very least, the currency was intended to be furnished in exchange for controlled substances.

17.  A review of law enforcement databases was conducted and the cash seized during the traffic stop was likely not withdrawn from a financial institution by PEREZ. No large cash withdrawals (in excess of $10,000) were noted within a year of the traffic stop and seizure. The $31,980 in seized currency consisted of 1199 $20 bills, 102 $50 bills, and 29 $100 bills. The denominations of the currency seized are consistent with drug trafficking proceeds, and not that of currency disbursed by financial institutions such as a bank. Furthermore, PEREZ's story that he was planning on purchasing a vehicle does not make sense. Assuming the pawn receipt is legitimate, he could finance a vehicle cheaper, with better terms than the 57% APR that the jewelry/pawn shop was charging him, with the total amount ($35,700) due in 4 months. At one point, PEREZ stated that the vehicle had too much mileage as a reason he did not ultimately purchase the vehicle, a fact that, if true, he would have known prior to traveling all the way from New York to Tennessee to purchase it.

18.  Online records check showed that PEREZ has a criminal history that includes theft and grand larceny charges in 2007, criminal sale of controlled substances in 2008, possession of stolen property in 2011, possession of controlled substance with intent to sell in 2010/2011, possession marijuana 2014, and assault charges in 2025. It appears that PEREZ was found guilty of the speeding charge in Nelson County District Court, and there appears to be an active bench warrant on the case as of April 2025 (for the fine owed or 7-day sentence). FERREIRA's marijuana and paraphernalia possession case is still pending, with a pretrial conference date in January 2026.

## CONCLUSION

Based on the above, including but not limited to: the strong odor of marijuana coming from the vehicle, the narcotics K-9 alert on the car and currency from PEREZ's backpack; the inconsistencies between all occupants in the vehicle about PEREZ's occupation, the time/duration/purpose of travel, the location of where they stayed, and the receipt contradicting all of their stories; PEREZ's reluctance to claim the money, his statements that he did not want to pay taxes on the money, his refusal to sign as the owner of the money; the fact that the money was bundled with rubber bands consistent with drug trafficking proceeds; unexplained wealth

Attachment A-5

based upon PEREZ's stated employment/income; and PEREZ's criminal history involving the sale of controlled substances; there is reasonable and probable cause to believe that the defendant property listed above and in the Complaint is subject to forfeiture to the United States, as proceeds directly and indirectly traceable to drug trafficking in violation of 21 U.S.C. §§ 841 and 846 (both facilitating and proceeds thereof), and proceeds intended to be furnished in exchange for controlled substances.

 Consequently, the property is subject to forfeiture under 21 U.S.C. § 881(a)(6).

<u>s/ Michael Halick</u>
SA Michael Halick
Drug Enforcement Administration